UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

United States of America,

        Plaintiff,

vs.                                   REPORT AND
                                      RECOMMENDATION

Walter Piwowar,

        Defendant.                    Crim. 04-496 (MJD/RLE)

* * * * * * * * * * * * * * * * * * *


I.  <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the following Motions of the Defendant Walter Piwowar:

1.  The Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure.

2.  The Defendant's Motion to Dismiss the Indictment.

3.  The Defendant's Motion for the Return of Property.

4.      The Defendant's Motion to Suppress Statements,
        Admissions, and Answers.

Hearings on the Motions were conducted on April 27, 2005, and May 3, 2005,

at which time, the Defendant appeared personally, and by Scott F. Tilsen, Assistant

Federal Defender, and the Government appeared by Richard A. Newberry Jr.,

Assistant United States Attorney.[1]

For reasons which follow, we recommend that the Defendant's Motion to

Suppress Evidence of Search and Seizure be denied, that his Motion to Dismiss the

Indictment be denied, that his Motion for the Return of Property be denied, as moot,

and that his Motion to Suppress Statements, Admissions, and Answers be denied.

## II.  Factual Background

The Defendant is charged with two Counts of mail fraud, in violation of Title 18

U.S.C. §1341; two Counts of being a felon in possession of a firearm, in violation of

Title 18 U.S.C. §922(g)(1); and two Counts of being a felon in possession of

---

[1]At the close of the Hearing, the parties requested leave to submit additional briefing on the Defendant's Motions, and leave was granted.  The last submission was received by the Court on May 13, 2005, at which time, the Motions were taken under advisement.  See, Title 18 U.S.C. §3161(h) (1)(F) and (J); Henderson v. United States, 476 U.S. 321, 330-32 (1986); United States v. Blankenship, 67 F.3d 673, 767-77 (8th Cir. 1995).

ammunition, in violation of Title 18 U.S.C. §922(g).  The events that gave rise to each of the fraud charges are said to have occurred on or about February 6, 2003, and April 9, 2003, respectively, while those that relate to the firearms and ammunition charges are said to have occurred on or about November 17, 2004, and all of the events, are said to have occurred in this State and District.

### III.  Discussion

A.  The Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure.

In seeking to suppress the seizures made at his home, and business, the Defendant argues that the Warrants executed were overly broad by failing to describe, with particularity, the items to be seized.[2]

1.  Standard of Review.  In the issuance of a Search Warrant, the Fourth Amendment dictates that an impartial, neutral, and detached Judicial Officer, will assess the underlying factual circumstances so as to ascertain whether probable cause exists to conduct a search, or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband.  Warden v. Hayden, 387 U.S. 294

---

[2]We append to this Report and Recommendation the recitations, in the Warrants of the items which were authorized to be seized.

(1967); United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995), cert. denied, 516 U.S. 1139 (1996).  In order to find probable cause, it must be demonstrated that, in light of all the circumstances set forth in the supporting Affidavit, there is a fair probability that contraband, or evidence of a crime, will be found in a particular, designated place.  United States v. Gladney, 48 F.3d 309, 313 (8th Cir. 1995); United States v. Tagbering, 985 F.2d 946, 949 (8th Cir. 1993).  For these purposes, probable cause is "a fluid concept, turning on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983); see also, Ornelas v. United States, supra at 695.

"Search warrant '[a]pplications and affidavits should be read with common sense and not in a grudging hyper technical fashion.'"  United States v. Ryan, 293 F.3d 1059, 1061 (8th Cir. 2002), quoting United States v. Goodman, 165 F.3d 610, 613 (8th Cir. 1999), cert. denied, 527 U.S. 1030 (1999).  In conducting such an examination, the Court should review the Affidavits as a whole, and not on a paragraph-by-paragraph basis.  United States v. Anderson, 933 F.2d 612, 614 (8th Cir. 1991); Technical Ordnance, Inc. v. United States, 244 F.3d 641, 649 (8th Cir. 2001), cert. denied, 534 U.S. 1084 (2002).  Moreover, the reviewing Court must not

engage in a <u>de novo</u> review but, rather, should accord great deference to the decision of the Judicial Officer who issued the Warrant.  <u>United States v. Maxim</u>, 55 F.3d 394, 397 (8th Cir. 1995), cert. denied, 516 U.S. 903 (1995); <u>United States v. Curry</u>, 911 F.2d 72, 75 (8th Cir. 1990), cert. denied, 498 U.S. 1094 (1991).  This mandated deference to the determination of the issuing Judicial Officer is consistent with the Fourth Amendment's sound preference for searches that are conducted pursuant to Warrants.  <u>Illinois v. Gates</u>, supra at 236.

With respect to the permissible scope of a Search Warrant, "[u]nder the fourth amendment, a search warrant must be sufficiently definite to allow the police to identify the property authorized to be seized with some particularity."  <u>United States v. Tyler</u>, 238 F.3d 1036, 1039 (8th Cir. 2001).  "The purpose of the particularity requirement is to prevent a general exploratory rummaging through a person's belongings."  <u>United States v. Mosby</u>, 101 F.3d 1278, 1281 (8th Cir.1996), cert. denied <u>sub nom.</u> <u>Muhaymin v. United States</u>, 520 U.S. 1254 (1997), quoting <u>United States v. Hibbard</u>, 963 F.2d 1100, 1102 (8th Cir. 1992); see also, <u>United States v. Mathison</u>, 157 F.3d 541, 549 (8th Cir. 1998), quoting <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 467 (1971).  "The degree of specificity required will depend on the circumstances of the case and on the type of items involved."  <u>United States v. Tyler</u>, 238 F.3d 1036, 1039 (8th Cir. 2001),

quoting United States v. Horn, 187 F.3d 781, 788 (8th Cir. 1999).  "[T]he requirement that a search warrant describe its objects with particularity is a standard of 'practical accuracy' rather than a hypertechnical one."  United States v. Beck, 122 F.3d 676, 679 (8th Cir. 1997); United States v. Mosby, supra at 1281; United States v. Peters, 92 F.3d 768, 769-70 (8th Cir. 1996), citing United States v. Lowe, 50 F.3d 604, 607 (8th Cir. 1995), cert. denied, 516 U.S. 900 (1995).

   2. Legal Analysis.  On or about November 17, 2004, a total of four Search Warrants were executed on property owned by the Defendant -- two at 42851 County Road 118, in the City of Rice, Minnesota, which is the Defendant's residence, and two at 3967 Highway 10, in City of Haven, Minnesota, which is where the Defendant's business is located.   Two of the Warrants contained a broad authorization, which permitted the Government to search for and seize "[d]ocuments or records, of Walter Piwowar JR personally and/or his businesses with the names of Diversified Investments Limited, a Minnesota Corporation and HI-10 Wheels and Deals."  Government Exhs. 1 and 3, at Attachment A.  The Defendant now maintains that those Warrants were facially invalid, as being overly broad.

On February 7, 2005 we heard argument on an earlier Motion by the Defendant to Suppress firearms, and ammunition, which were discovered during two of the same searches that are also being challenged here.  In ruling on the Defendant's Motion, we found that the Affidavits, which supported those Search Warrants, were sufficient to establish probable cause that evidence of criminality would be discovered at the Defendant's home, and accordingly, we recommended that the Defendant's Motion be denied.  In our Report and Recommendation, we recited the operative averments, which detailed a lengthy history of assertedly fraudulent insurance claims, as contained in the Search Warrants' Supporting Affidavits, as follows:

> In the Application for the first Search Warrant, Detective Thomas Rainville ("Rainville"), of the Hennepin County Sheriff's Department, averred to the extensive investigation of Piwowar for arson and insurance fraud, with the time period for suspected criminal activity ranging from July of 1973, up to the present.  Rainville detailed the unusually large number of insurance claims made by Piwowar for the destruction of certain properties, many of which were damaged or destroyed [by] fire, as well as claimed thefts.

> Rainville also detailed information provided to law enforcement officers, over the course of the time period between March of 2004, until October of 2004, by Aristotle Piwowar ("Aristotle"), who is Piwowar's son, concerning some of those claims.  Specifically, Rainville avers that Aristotle informed investigators with the Minneapolis Police

Department, and with the Hennepin County Sheriff's Department, that some of the property claimed to have been stolen, during a series of three reported burglaries in 2001, had not, in fact, been stolen, and was still in Piwowar's possession. As to the first of those burglaries, Aristotle represented that he had observed Piwowar kick in the front door because there was not enough damage to the door.

Rainville also avers that Aristotle had reported several instances where Piwowar had admitted to having set fires to various houses, in order to collect insurance monies. Aristotle stated that Piwowar had shown him some of the properties that he had "torched," and even provided him with detailed instructions as to how to set fire to a building or other property.

During a conversation in October of 2004, Aristotle informed law enforcement officers about a red and white "Crestline[r]" boat, that he had reported stolen, and had submitted an insurance claim on, in July of 1999, at the instruction of Piwowar. Aristotle stated that * * * Piwowar had bought the boat, with knowledge that it had been stolen, and that the boat was still in Piwowar's possession, but that the motor had been removed. Rainville averred that, on October 20, 2004, he drove past Piwowar's business, which is located adjacent to Highway 10, in St. Cloud, Minnesota, and observed a boat matching the description of that described by Aristotle, with the motor missing.

Rainville also averred to information that had been provided by a person identified as Don Reynolds ("Reynolds"). Reynolds informed Rainville that he had previously worked for Piwowar, rented from him, and socialized with him on

- 8 -

a regular basis.  Reynolds stated that Piwowar had informed him that he bought properties, and burned them for insurance monies.  Reynolds stated that Piwowar had also encouraged him to engage in that type of conduct.

Information obtained from a person identified as Craig Ericson ("Ericson") was also included in the Affidavit. Rainville averred that Ericson had informed him that he had developed a friendship with Piwowar, because of their joint interest in rental properties.  Ericson further advised that he had bought the "Crestline[r]" boat, which had been referenced by Aristotle for $500.00, from an unknown party in North Minneapolis, and that he had then sold it to Piwowar, after telling him that the boat was stolen.[3] Ericson also stated that Piwowar had represented to him that "he has made a living off insurance claims," and that "he has collected on this and that."

Lastly, Rainville averred that Piwowar had recently pled guilty to felony assault, for an incident in November of 2003, where he threatened Aristotle with a handgun.  As a result of that conviction, Piwowar turned in approximately ten (10) guns on November 15, 2004.  Rainville also averred, however, that in previous insurance claims, Piwowar had reported over thirty (30) long rifles and pistols stolen, along with thousands of rounds of ammunition.

Docket No. 29, at pp. 11-14.

---

[3]For purposes of the pending Motion, it is also important to note that Rainville averred that Ericson had acknowledged that the vehicle identification number ("VIN") on the stolen boat had been switched with the VIN on a legitimate boat that was no longer in existence.

Our recommendation, that the Motion to Suppress be denied, was adopted by the District Court, and we continue in the conviction that the Affidavits were sufficient to establish probable cause that evidence of criminal activity was present at the Defendant's home.  Furthermore, considering that the Affidavits describe the presence of stolen property at the Defendant's business, along with fraudulent insurance claims made on the Defendant's business, we now find adequate probable cause to believe that evidence of criminal activity, in the form of documentation and records, was present at the Defendant's business at the time that the Warrant was issued.

Despite our finding that the probable cause was present to justify the issuance of Search Warrants for the Defendant's property, we also recognize that, in order to be sufficiently particular, a Search Warrant must establish a sufficient nexus between the criminal activity which provides the basis for probable cause, and the items authorized for seizure.  Warden v. Hayden, supra at 307.  Accordingly, we turn to the Defendant's argument that, even though probable cause may have been present to search for and seize certain items, probable cause was not present to search for each and every item that was either included in the Search Warrant or seized during its execution.

Using a practical accuracy approach, "a search warrant involving a scheme to defraud is 'sufficiently particular in its description of the items to be seized if it is as specific as the circumstances and nature of activity under investigation permit.'" United States v. Saunders, 957 F.2d 1488, 1491 (8th Cir. 1992), cert. denied, 506 U.S. 889 (1992), quoting United States v. Kail, supra at 445.   As our Court of Appeals explained, in United States v. Horn, supra at 788:

> The degree of specificity required will depend on the circumstances of the case and on the type of items involved. [United States v. Strand, 761 F.2d 449, 453 (8th Cir. 1985)].  A warrant naming only a generic class of items may suffice if the individual goods to be seized cannot be more precisely identified at the time that the warrant is issued.  United States v. Johnson, 541 F.2d 1311, 1314 (8th cir. 1976)(per curiam).   We have upheld warrants authorizing the seizure of "certain books and records * * * relating to extortionate credit transaction business," United States v. Dennis, 625 F.2d 782, 792 (8th Cir. 1980), and of "any and all chemicals, * * * books, records, chemical equipment, and personal papers, relating to the manufacture and distribution of methamphetamine and the purchase of component chemicals and equipment which is in violation of [a certain statute, identified by section and subsections]." United States v. Coppage, 635 F.2d 683, 687 (8th Cir. 1980).

Similarly, in United States v. Tyler, supra at 1039, where a search warrant "permitted the police to collect a wide range of items such as documents, weapons, and personal

- 11 -

phone/address books, but only if they were related to drug activities," our Court of Appeals was "satisfied that the search warrant was sufficiently specific," explaining that the Court has "held a search warrant is adequately specific if it calls for the seizure of property involved in a defendant's commission of crimes." Citing <u>United States v. Horn</u>, supra at 788; see also, <u>United States v. Stelten</u>, 867 F.2d 446, 450 (8th Cir. 1989), cert. denied, 493 U.S. 828 (1989).

As other Courts have recognized, "a generalized seizure of business documents may be justified if the government establishes probable cause to believe * * * that all of the business's records are likely to evidence criminal activity." <u>United States v. Anderson</u>, 94 Fed. Appx. 487, 492 (9th Cir. 2004), quoting <u>United States v. Sayakahom</u>, 186 F.3d 928, 934 (9th Cir. 1999); see also, <u>United States v. Bentley</u>, 825 F.2d 1104, 1110 (7th Cir. 1987)("[W]hen there is probable cause to seize every business paper on the premises, a warrant stating 'seize every business paper' particularly describes the things to be searched for and seized."); cf., <u>Korkowski v. Clancy</u>, 111 F.3d 135, 1997 WL 158076 at ***1 (8th Cir. 1997)[Table Decision] citing <u>United States v. Accardo</u>. 749 F.2d 1477, 1479 n. 3 (8th Cir. 1985), cert. denied, 474 U.S. 949 (1985), for the proposition that "seizure of all business records was

constitutional where suspected offense involved complex fraud scheme." As our

Court of Appeals recognized, in <u>United States v. Mathison</u>, supra at 549, allegations

of fraud require greater flexibility in the particularity standard:

> In this case the FBI had considerable information regarding
> [the defendant's] criminal activity, including the names of
> 17 corporations that were potentially involved in criminal
> wrongdoing. But fraud, by its nature, entails concealment.
> The FBI could not be certain that the records of the 17
> corporate entities about which it had information would
> contain evidence of [the defendant's] crimes. It therefore
> sought, and received, authorization to search all of [the
> defendant's] financial records in addition to the delineated
> corporate records. Because the first search warrant limited
> the search to all records pertaining to the specified
> corporations and to certain individuals' financial records,
> we find that it was sufficiently particular. See, e.g., United
> States v. Rude, 88 F.3d 1538, 1551 (9th Cir. 1996), cert.
> denied, 519 U.S. 1058, 117 S.Ct. 690, 136 L.Ed.2d 613
> (1997).

The very same may be said here.

As we have quoted, at some length, the Affidavit details a significant and

ongoing scheme to commit insurance fraud. The alleged fraud occurred over the

course of approximately thirty years and, according to Rainville's attestations, was

ongoing. The Affidavit described fraudulent insurance claims at the Defendant's

home, his place of business, and at various rental properties. It also detailed the

- 13 -

presence of stolen property on the Defendant's property, as well as representations, from Ericson, that a stolen boat was present at the Defendant's business, and that the VIN on the boat had been switched for one which was legitimate, but which was no longer in existence.

Based on these averments, we are persuaded that probable cause was present to believe that the Plaintiff's business activities, as well as his personal affairs, were so fraught with fraudulent practices, that a more particularized Search Warrant would not have been feasible.  See, United States v. Najarian, 915 F. Supp. 1441, 1458 (D. Minn. 1995).  Therefore, we are satisfied that the Supporting Affidavits provided a sufficient nexus between the criminal activity described, and the items whose seizure was authorized by the Search Warrant.  See United States v. Kail, supra at 444-445 (A Search Warrant authorizing the seizure of almost all of the business records of a defendant was permissible because there was "probable cause to believe that fraud permeated the entire business organization."); United States v. Saunders, supra at 1491 (A Search Warrant authorizing the seizure of "briefcases and other containers capable of storing [evidence of social security fraud]" was sufficiently particular.); United States v. Stelten, supra at 450 (A Search Warrant authorizing the seizure of nearly all

business records was sufficiently particular where it was limited to items being used in violation of Federal law.).  Therefore, we recommend that the Defendant's Motion to Suppress Evidence of Search and Seizure be denied.

Even if the Search Warrants were overly broad, we would be compelled, by the law of this Circuit, to find that the officers' reliance upon the Search Warrant was reasonable, because it "was not so facially lacking in probable cause as to preclude the executing officers' good faith reliance thereon."  United States v. McNeil, 184 F.3d 770, 775 (8th Cir. 1999), citing United States v. Leon, 468 U.S. 897, 922-23 (1984); see, United States v. Najarian, supra at 1459(finding that good faith exception would apply to a Search Warrant that was overly broad).  Accordingly, even if probable cause were lacking, we would still recommend that the Defendant's Motion to Suppress evidence seized during the execution of the Search Warrants be denied.

B.    The Defendant's Motion to Dismiss the Indictment.

1.    Standard of Review.  Rule 12(b), Federal Rules of Criminal Procedure, allows our consideration, at the pretrial stage, of any defense "which is capable of determination without the trial of the general issue."  To withstand a Motion to Dismiss, an Indictment must allege that the Defendant performed acts which, if

proven, would constitute a violation of the law under which he has been charged.

United States v. Polychron, 841 F.2d 833, 834 (8th Cir. 1988), cert. denied, 488 U.S.

851 (1988).  As a result, if the acts, that have been alleged in the Indictment, do not

constitute a criminal offense, then the Indictment should be dismissed.  See, e.g.,

United States v. Coia, 719 F.2d 1120, 1123 (11th Cir. 1983), cert. denied, 466 U.S.

973 (1984).  In reviewing the sufficiency of an Indictment, or of any of its Counts, we

are to determine whether the Indictment sufficiently sets forth the elements of the

offenses alleged, where the offenses are said to have occurred, in order to place the

Defendant on fair notice as to the charges against him, and whether it enables the

Defendant to assert an acquittal or conviction so as to invoke his privilege against

double jeopardy for a single offense.  Hamling v. United States, 418 U.S. 87, 117

(1974); United States v. Hall, 20 F.3d 1084, 1087 (10th Cir. 1994).

In determining whether an Indictment has sufficiently set forth the elements of

the offense charged, the Indictment will generally be deemed sufficient "'unless no

reasonable construction can be said to charge the offense.'"  United States v. Morris,

18 F.3d 562, 568 (8th Cir. 1994), quoting United States v. Peterson, 867 F.2d 1110,

1114 (8th Cir. 1989).  In making this assessment, "[a]n indictment should be tested

solely on the basis of the allegations made on its face, and such allegations are to be taken as true." United States v. Hall, supra at 1087, citing United States v. Sampson, 371 U.S. 75, 78-79 (1962); see also, United States v. Barker Steel Co., Inc., 985 F.2d 1123, 1125 (1st Cir. 1993); United States v. Cadillac Overall Supply Co., 568 F.2d 1078, 1082 (5th Cir. 1978).

Ordinarily, the Court's assessment is limited to the "four corners" of the Indictment, and the Court should studiously avoid the consideration of evidence from sources beyond the Indictment. United States v. Hall, supra at 1087. However, it is permissible, and even desirable in certain circumstances, for the Court to examine the factual predicates of an Indictment, particularly where material facts are undisputed, in order for the Court to ascertain whether the elements of the criminal charge can be shown. Id.; United States v. Brown, 925 F.2d 1301 (10th Cir. 1991).

2.    Legal Analysis.  The Defendant does not challenge the sufficiency of the Indictment to set forth the crimes alleged, but instead, he challenges the allegations contained in Counts Three through Six, as being duplicitous.  Specifically the Defendant requests that we issue an Order directing the Government to either dismiss Count Three or Count Four, and Count Five or Count Six, on the ground that

they charge the same crime, and hence violate his right to a fair Trial, and to be protected from double jeopardy under the Fifth Amendment.

"'"Duplicity" is the joining in a single count of two or more distinct offenses.'" United States v. Moore, 184 F.3d 790, 793 (8th Cir. 1999), quoting United States v. Street, 66 F.3d 969, 974 (8th Cir. 1995).  As such, "[t]he risk behind a duplicitous charge is that a jury may convict the defendant without unanimous agreement on a particular offense."  Id.; see also, United States v. Street, supra at 974 ("The principal vice of a duplicitous indictment is that the jury may convict a defendant without unanimous agreement on the defendant's guilt with respect to a particular offense.").

Counts Three through Six of the Indictment all charge the Defendant with violations of Title 18 U.S.C. §922(g) which, in pertinent part, makes it unlawful for persons convicted of a felony "to * * * possess in or affecting interstate commerce, any firearm or ammunition."  Under that statute, the possession of multiple firearms, in the same place, on the same occasion, constitutes a single offense.  See, United States v. Kinsley, 518 F.2d 665, 668-670 (8th Cir. 1975); United States v. Verracchia, 196 F.3d 294, 298 (1st Cir. 1999); see also,  United States v. Powers, 572 F.2d 146, 152 (8th Cir. 1978).  Thus, while Counts Four, Five, and Six, allege that the Defendant

possessed multiple firearms, and multiple types of ammunition, each of those Counts sufficiently alleges a single offense, and therefore, are not duplicitous.

As we construe it, the Defendant has also urged the dismissal of either Counts Three or Four, and Counts Five or Six, on the grounds that those Counts are multiplicitous. "A 'multiplicitous' indictment is one that charges a single offense in multiple counts and generally is not improper in a well-pleaded indictment." United States v. Worthon, 315 F.3d 980, 983 (8th Cir. 2003), citing, United States v. Webber, 255 F.3d 523, 527 (8th Cir. 2001); see also, United States v. Christner, 66 F.3d 922, 927 (8th Cir. 1995); United States v. Fay, 668 F.2d 375, 379 (8th Cir. 1981); United States v. Eagle, 586 F.2d 1193, 1196 (8th Cir. 1978). Offenses are separate, and therefore, not multiplicitous, if each offense requires proof of an element not required by the other. United States v. Najarian, supra at 1477, citing Blockburger v. United States, 284 U.S. 299, 304 (1932). Further, "whether an aggregate of acts constitutes a single course of conduct and therefore a single offense, or more than one, may not be capable of ascertainment merely from the bare allegations of an information and may have to await the trial on the facts." United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 225 (1952).

- 19 -

As our Court of Appeals has recently reiterated, an Indictment is not multiplicitous for charging the possession of firearms in a separate Count from the possession of ammunition.  United States v. Walker, 380 F.3d 391, 394-395 (8th Cir. 2004); see also, United States v. Peterson, 867 F.2d 1110, 1115 (8th Cir. 1989). Furthermore, firearms and ammunition, which are stored in separate places, or which were acquired at different times, may also be charged in separate Counts.  Untied States v. Hutching, 75 F.3d 1453, 1460 (10th Cir.) cert. denied, 517 U.S. 1246 (1996); see United States v. Walker, supra at 393; United States v. Winn, 969 F.2d 642, 643 (8th Cir. 1992); United States v. Powers, supra at 152.

Counts Three through Six each allege that the Defendant's possession of the identified firearms and ammunition occurred on or about November 17, 2004.  While it is not apparent on the face of the Indictment, the Government has represented that the firearms and ammunition, which underlie Counts Three and Five, were stored at the Defendant's home, while those, which comprise the basis for Counts Four and Six, were stored at the Defendant's business.  The Defendant does not appear to contest that representation, which is also supported by the correlation between the firearms identified in the Indictment, and the inventories of items seized during the

execution of the Search Warrants at the Defendant's home, and business, respectively. See, Government Exh. 2, at unnumbered p. 13; Government Exh. 4, at unnumbered pp. 10-11. As such, while the possession alleged in all four firearms and ammunition Counts is said to have occurred on the same day, the Indictment is not multiplicitous, since the storage of the firearms and ammunition allegedly possessed, as alleged in Counts Three and Five, were in different locations from those firearms and ammunition allegedly possessed, as charged in Counts Four and Six. See, United States v. Hutching, supra ay 1460 ("The scattered location of the guns constituted separate storages that permitted possession of each firearm to constitute a separate offense."); citing United States v. Gann, 732 F.2d 714, 721 (9th Cir.), cert. denied, 469 U.S. 1034 (1984). Therefore, having found the Indictment sufficient to withstand the Defendant's challenges, we recommend that his Motion to Dismiss be denied.

      C.     The Defendant's Motion for the Return of Property.

By letter dated June 1, 2005, United States Postal Inspector Tina L. Lathrop, advised counsel for the Defendant that the materials listed in his letter of May 4, 2005, to this Court, were being returned to counsel. There appears to be a signature line, showing an execution of a receipt of the materials, by defense counsel, on June

8, 2005.  Accordingly, we find that this Motion is now moot.  If, however, any property belonging to the Defendant remains in dispute, the parties may contact this Court for a resolve.  On this Record, however, we deny the Motion for Return of Property as moot.

> D.     The Defendant's Motion to Suppress Statements Admissions and Answers.

The Defendant's Motion fails to identify any statements which, he contends, were elicited in a manner that violates the Constitution, and no testimony, or argument, as to the substance of this Motion has been offered by either the Defendant, or the Government.  As is reflected in our conduct of two separate Hearings on the Defendant's Motions, the Defendant has been afforded an ample opportunity to identify any statements which are the subject of this Motion, and to explain the bases upon which suppression should be granted.  Having failed to avail himself of those opportunities, we are left with no choice, but to recommend that his Motion be denied, without a further evidentiary Hearing on the matter.  See, United States v. Mims, 812 F.2d 1068, 1074 (8th Cir. 1987)(On a Motion to Suppress telephonic interceptions, the defendant's failure to "assert what may have been wrong with the interceptions, or in fact, even what interceptions that he [was] concerned

- 22 -

with," justified the District Court's decision to deny the Motion without the conduct of an evidentiary Hearing.); citing <u>United States v. Losing</u>, 539 F.2d 1174, 1178 (8th Cir. 1976).   Accordingly, the Defendant's Motion to Suppress Statements should be denied as having been waived.

NOW, THEREFORE, It is --

RECOMMENDED:

1.    That the Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 40] be denied.

2.    That the Defendant's Motion to Dismiss the Indictment [Docket No. 46] be denied.

3.    That the Defendant's Motion for the Return of Property [Docket No. 47] be denied as moot.

4.    That the Defendant's Motion to Suppress Statements, Admissions, and Answers [Docket No. 38] be denied.

Dated:  June 13, 2005          <u>s/Raymond L. Erickson</u>
                               Raymond L. Erickson
                               UNITED  STATES  MAGISTRATE  JUDGE

- 23 -

NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than June 30, 2005**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than June 30, 2005**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.

APPENDIX

The Search Warrants describe the following items which were authorized to be seized:

[1] Records, titles, transactions records of a stolen 78 or 79, red & white Crestliner motor boat MN license M25715 and Trailer License C88523 from a transaction with Craig Ericson from Wisconsin and the records and documents of a subsequent insurance claim with Allstate Insurance Company on or about 7-4-99 made in conjunction with Aristotle Piwowar.  And the aforementioned describe boat and trailer. [sic]

[2]  Records, titles, transaction records of an older Kawasaki motorcycle and the motorcycle.

[3]  Insurance claims records, documents, files, proof of loss notices, inventory records used to submit insurance claims, receipts for items claimed for insurance claims, and correspondence with insurance companies.

[4] Bank records monthly bank statements, cancelled checks, checkbooks, checks, negotiable financial instruments, savings account records, and/or deposit or

withdrawal slips and any financial records that show payment on an insurance claim by Walter Piwowar Jr. or his businesses or associated with property he owned or managed.

[5] Photographs of items claimed on insurance files.

[6]  Applications for insurance, records, files, address books that list insurance agents Walter Piwowar JR conducted business with.

[7]  Copies of police and fire department reports that list property stolen or damaged on property that Walter Piwowar or through his businesses, owned, managed, or was caretaker of.

[8]  Records of real estate transactions of Walter Piwowar JR or his businesses.

[9] Real Estate holdings, property transferred to, inherited from Walter Piwowar SR, or property managed by Walter Piwowar JR or his businesses.

[10] Records on properties remodeled by Walter Piwowar JR or his businesses.

[11] Credit card records, credit card receipts or statements of Walter Piwowar JR or his businesses.

[12] Accounting records, financial statements, and the source documents for bookkeeeping or accounting journals, ledgers, and accounts, including income statements, financial statements, expense records, receipts of Walter Piwowar JR or his businesses.

[13] Tax returns, tax schedules, and the source documents for returns and schedules Walter Piwowar JR both personally or his businesses.

[14] Memoranda, and notes, whether in paper or electronic form.

[15] Landline cellular telephone monthly statements and records.

[16] Address books, phone directories of Walter Piwowar JR or his businesses.

[17] Photographs, photographic negatives, stored digitalized photographic data, or various structures and contents submitted for insurance coverage or claims.

[18] Newspaper articles on fires or insurance claims.

[19] Items that show ownership and control of 42851 Co Rd 118 Rice, MN (Stearns County, & 3967 Hwy 10 SE St. Cloud, (Sherburne County).

[20] Keys and/or codes for and location of offsite storage locations, vehicles, or buildings, safe deposit boxes at a bank or private mailbox or private safety deposit businesses.

[21] All of the items listed, whether stored in locked or unlocked cabinets, safes, wallets, purses, carrying cases, or computer hard drives, computer systems, containers that can hold records, documents, or electronic storage media or data, including but not limited to computers, pagers, cell phones, telephone answering machines or voice mail.

[22] Items of identification of Walter Piwowar Jr. or any identification that he has possession of or uses.

[23] Vehicles that are used by Walter Piwowar Jr. where records and documents can be transported.

[24] Vehicles, boats, and motorcycles that are on property owned by Piwowar to check VIN numbers to determine if the vehicles are stolen.